UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JENNA IN WHITE, LLC, and
ELISSAR BRIDAL, LLC,

                Plaintiffs,

v.

HEATHER FISCHER,

                Defendant.

_____/

Case No. 2:22-cv-12602

HONORABLE STEPHEN J. MURPHY, III

## <u>OPINION AND ORDER GRANTING MOTION TO DISMISS [11]</u>

Plaintiffs Jenna in White (JIW) and Elissar Bridal filed a complaint that alleged breach of contract, violation of the Defend Trade Secrets Act (DTSA), violation of the Michigan Uniform Trade Secrets Act (MUTSA), tortious interference with employment contracts, and tortious interference with prospective business relationships. ECF 9, PgID 41–48. Defendant Heather Fischer moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), and she moved to dismiss Plaintiff Elissar from the case. ECF 11. Plaintiffs responded to the motion. ECF 12. For the following reasons, the Court will grant the motion.[1]

---

[1] Based on the parties' briefing, the Court will resolve the motion on the briefs without a hearing. *See* Fed. R. Civ. P. 78(b); E.D. Mich. L.R. 7.1(f)(2).

### BACKGROUND[2]

Plaintiff JIW is a bridal apparel company in Berkley, Michigan. ECF 9, PgID 35. Plaintiff Elissar is an affiliate of Plaintiff JIW. *Id.* Defendant was employed by Plaintiffs as a store manager for about three years. *Id.* at 36.

Defendant executed and signed a noncompete agreement with Plaintiff JIW. ECF 11-1, PgID 67–71. The noncompete provided that Defendant would, both during and after her employment, "hold in strictest confidence and . . . not use or disclose any of the company's confidential and proprietary information." *Id.* at 67 (alterations omitted). The noncompete also prohibited Defendant from "contacting or soliciting, or attempting to contact or solicit, any customer or supplier of the company for purposes of gaining the business of such customer." *Id.* at 68 (alterations omitted).

Plaintiffs alleged that Defendant had twice "connect[ed] with customers of Plaintiffs and add[ed] them to, and communicat[ed] with them from, Defendant's personal social media accounts." ECF 9, PgID 37. On the first occasion, Plaintiffs alleged that Defendant obtained information from customers and prospective customers that included personal contact information and information about apparel orders at a bridal exposition in Illinois. *Id.* at 37–38. Plaintiffs "paid for Defendant . . . to work at Plaintiffs' booth at the expo." *Id.* at 37. "Defendant was supposed to obtain . . . information from customers and prospective customers at the expo" for Plaintiffs' benefit. *Id.* Plaintiffs noted that Defendant faithfully collected

---

[2] Because the Court must view all facts in the light most favorable to the nonmoving party, *see Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008), the Court's recitation does not constitute a finding or proof of any fact.

customer information for Plaintiffs, per Plaintiffs' instructions. *Id.* at 38. But Plaintiffs also stated that Defendant then "shared her personal contact and social media information" with customers "instead of providing [the] contact information of Plaintiffs." *Id.* at 38.

On the second occasion, Plaintiffs contended that Defendant committed the same wrongful act at a bridal exposition in New York. *Id.* Plaintiffs "paid for admission as a vendor" at the New York bridal exposition, and they "paid for Defendant . . . to work at Plaintiff's booth at the New York expo." *Id.* "Similar to the Chicago expo, defendant was supposed to obtain, and did obtain for Plaintiffs information from customers and prospective customers." *Id.* Defendant faithfully obtained for Plaintiffs "names and personal contact information of owners and purchase agents of customers" as well as "orders and information about dresses customers were ordering or would be ordering." *Id.* "Specifically, Defendant gathered the nonpublic names and contact information of owners and purchasing agents of bridal retailers who placed orders with Plaintiffs or provided their information to Plaintiffs after indicating interest in Plaintiffs' products." *Id.* at 39. Defendant collected the above information in her capacity as Plaintiffs' employee and at Plaintiffs' direct instruction. *Id.* The information Defendant collected, alleged Plaintiffs, "is not easily ascertainable without extraordinary effort and expense, including paying for and attending specific, expensive trade expos in wedding dress retail . . . and obtaining from customers and prospective customers their owners' and purchasing agents' information." *Id.* Plaintiffs admitted that Defendant acquired the

expensive information at their direction, but they also alleged that Defendant directed "Plaintiffs' customers to contact Defendant directly, provid[ed] her personal contact information to them, and directly communicat[ed] with them through her personal number, email, and/or social media accounts." *Id.*

Last, Plaintiffs alleged that Defendant notified them "[i]n the middle of the New York expo" that she "would not be showing up to the rest of the expo" or working for Plaintiff Elissar anymore. *Id.* at 40. At that point, she allegedly "began to contact customers and potential customers of Plaintiffs, indicating that she was no longer working with Plaintiffs and attempting to deter them from doing, or continuing to do, business with Plaintiffs." *Id.* Plaintiffs alleged that Defendant "us[ed] the contact information misappropriated from Plaintiffs" to "disparage and defam[e]" them and to commit other tortious acts. *Id.*

## LEGAL STANDARD

The Court may grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) if the complaint fails to allege facts "sufficient 'to raise a right to relief above the speculative level,' and to 'state a claim to relief that is plausible on its face.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). In a Rule 12(b)(6) motion, courts can only "consider the [c]omplaint and any exhibits attached thereto . . . [and] items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett*, 528 F.3d at 430 (citation omitted); *see also Decoration*

4

*Design Sols., Inc. v. Amcor Rigid Plastics USA, Inc.*, 553 F. Supp. 3d 424, 427 (E.D. Mich. 2021) (Murphy, J.).

The Court views the complaint in the light most favorable to the plaintiff, presumes the truth of all well-pleaded factual assertions, and draws every reasonable inference in the nonmoving party's favor. *Bassett*, 528 F.3d at 430. But the Court will not presume the truth of legal conclusions in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If "a cause of action fails as a matter of law, regardless of whether the plaintiff's factual allegations are true or not," then the Court must dismiss the complaint. *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1005 (6th Cir. 2009).

## DISCUSSION

Defendant argued that Plaintiffs failed to plead a claim under both the DTSA and the MUTSA and that Plaintiff Elissar should be dismissed from the case. ECF 11, PgID 56–63. The Court will first grant Defendant's motion to dismiss as to the DTSA claim. After, the Court will decline to exercise supplemental jurisdiction over the remaining claims and dismiss the case.

I.    <u>DTSA</u>

Defendant contended that Plaintiffs failed to plead sufficient facts to support their DTSA claim. *Id.* at 56. She advanced two arguments: one, that Plaintiffs failed to plead with requisite particularity under Federal Rule of Civil Procedure 9(b); and two, that Plaintiffs failed to plead with requisite particularity under Federal Rule of

Civil Procedure 8(a). *Id.* at 56, 59. The Court will first address Defendant's two arguments in turn.

     A.    *Federal Rule of Civil Procedure 9(b)*

Defendant argued that Plaintiffs failed to plead their claims with the particularity required by Rule 9(b). ECF 11, PgID 56–59. Defendant first maintained that Plaintiffs had not satisfied Rule 8(a)(2) because they "fail[ed] to provide any details regarding why they consider the [contact] information as unique and/or protected." *Id.* at 59. Second, Defendant argued that Plaintiffs failed to "allege whether the Expo attendees were ever realized as actual customers, or if they were simply just browsing through the Expo and interacting with the other numerous vendors in attendance at the public Expo." *Id.* at 58–59.

Rule 9(b) provides that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Rule 9(b)'s particularity requirement is a "heightened pleading requirements." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006). But "the Federal Rules of Civil Procedure do not require heightened pleadings for trade secret claims." *Foulk Consulting Servs., Inc. v. BlazeMeter, Inc.*, No. 20-11446, 2020 WL 10620265, at *5 (E.D. Mich. Nov. 16, 2020); *see also Xoran Holdings LLC v. Luick*, No. 16-13703, 2017 WL 4039178, at *6 (E.D. Mich. 2017). Thus, because Rule 9(b) does not apply to trade secret claims, Defendant's argument fails.

B.    *Federal Rule of Civil Procedure 8(a)*

Defendant next argued that Plaintiffs failed to adequately plead their claim under Rule 8(a). ECF 11, PgID 59. Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." It need not include "detailed factual allegations," but "a formulaic recitation of the elements of a cause of action will not do." *Bell*, 550 U.S. at 555.

"To state a claim for misappropriation of trade secrets under the [DTSA], a plaintiff must allege facts establishing an unconsented disclosure or use of a trade secret by one who used improper means to acquire the secret; or, at the time of the disclosure, knew or had reason to know that the trade secret was acquired through improper means, under circumstances giving rise to a duty to maintain the secrecy of the trade secret." *Ford Motor Co. v. Launch Tech Co.*, No. 17-12906, 2018 WL 1089276, at *16 (E.D. Mich. Feb. 26, 2018); *see also* 18 U.S.C. § 1836(b)(2).

To start, the customer information and customer orders at issue constitute trade secrets because "customer lists developed by a former employee and information relating to a customer's needs may be considered trade secrets if the employee is bound by a confidentiality agreement." *Prescription Supply, Inc. v. Musa*, No. 16-12070, 2017 WL 747601, at *4 (E.D. Mich. Feb. 27, 2017) (citing *Laethem Equip. Co. v. Deere & Co.*, No. 05-10113, 2007 WL 2433980, at *18 (E.D. Mich. Aug. 14, 2007)). Here, Defendant signed a noncompete agreement that required Defendant to "hold in the strictest confidence and not use or disclose any of the company's confidential and proprietary information." ECF 11-1, PgID 67 (alterations omitted).

Likewise, the complaint stated that Defendant signed the noncompete agreement to "maintain the security and privacy of Plaintiffs' confidential information, including customer lists and contact information." ECF 9, PgID 36. Because Defendant was allegedly bound by a confidentiality agreement, it follows that the customer information and customer orders at issue constitute trade secrets for purposes of the DTSA and MUTSA.[3]

But Plaintiffs' complaint is nonetheless insufficient because Plaintiffs failed to plead facts establishing a DTSA claim. "To state a claim for misappropriation of trade secrets under the [DTSA], a plaintiff must allege facts establishing an unconsented disclosure or use of a trade secret by one who used improper means to acquire the secret." *Ford*, 2018 WL 1089276, at *16. Plaintiffs pleaded facts that established an unconsented disclosure or use of trade secrets, but they failed to plead facts that established that Defendant used improper means to acquire the trade secrets.

Granted, the complaint alleged that "Defendant acquired the trade secrets through improper means." ECF 9, PgID 44 (alterations omitted). But the improper means Plaintiffs identified were the "taking and keeping [of] Plaintiffs' information

---

[3] To be sure, customer information has been held to not constitute trade secrets if "the information sought to be protected was readily available through another source." *Laethem*, 2007 WL 2433980, at *18. But the complaint pleaded that the customer information and customer orders at issue were only obtainable by attending bridal expositions. ECF 9, PgID 39, 43. The complaint also provided that attending the bridal expositions was extremely expensive for Plaintiffs. *Id.* In sum, Plaintiffs adequately pleaded that the customer information and customer orders at issue were not readily available through another source.

from the expos." *Id.* Simply put, Plaintiffs' allegations are insufficient and their reasoning in the response brief is unpersuasive.

For one, Plaintiffs failed to address the specific question of improper acquisition. Plaintiffs had to allege facts "establishing an unconsented disclosure or use of a trade secret by one who used improper means to *acquire* the secret." *Ford*, 2018 WL 1089276, at *16 (emphasis added). Yet Plaintiffs merely recited the "improper means" requirement of pleading a DTSA claim. And a mere recitation of the elements of a claim "will not do." *Bell*, 550 U.S. at 555. For instance, Plaintiffs did not describe what was improper about the means Defendant used to acquire the trade secrets. Nor did they allege any facts that showed Defendant obtained orders from potential customers in an improper way. In the end, Plaintiffs failed to plead facts establishing that Defendant acquired the trade secrets at issue through improper means.

For another, Plaintiffs' conclusion that Defendant acquired the proprietary information by improper means is contradicted by the facts alleged in the rest of the complaint. Indeed, the complaint suggested that Defendant properly acquired the trade secrets because she was allegedly instructed—and paid—to acquire the information by Plaintiffs. *See, e.g.*, ECF 9, PgID 38 ("Defendant was supposed to obtain, and did obtain, for Plaintiffs information from customers and prospective customers, . . . including the names and personal contact information of owners and purchase agents of customers."); 37 ("Plaintiffs also paid for Defendant . . . to work at Plaintiffs' booth at the expo.").

Last, Plaintiffs reasoned that Defendant obtained the proprietary information through "improper means" because she later used the customer information and customer orders for her own purposes. But whether Defendant later used the trade secrets for her own benefit is unrelated to whether her acquisition of those trade secrets was improper. Plaintiffs' DTSA claim is therefore unsupported and even contradicted by other facts pleaded in the complaint. The Court will thus dismiss the claim with prejudice.

II.   <u>Remaining Claims</u>

The remaining claims are State-law claims, *see* ECF 9, PgID 35, 41, 45–48, and the Court will decline to exercise supplemental jurisdiction over them. 28 U.S.C. § 1367(c)(3); *see Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir. 2009) ("Under 28 U.S.C. § 1367(c)(3), the district court may decline to exercise supplemental jurisdiction over a claim if it has dismissed all claims over which it has original jurisdiction."). The State-law claims are accordingly dismissed without prejudice.

**WHEREFORE**, it is hereby **ORDERED** that Defendant's motion to dismiss [11] is **GRANTED**.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: January 18, 2023

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on January 18, 2023, by electronic and/or ordinary mail.

s/ David P. Parker
Case Manager

10